# EXHIBIT A

## LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease") is made on this 21 day of May, 2019, by and between the Landlord and Tenant hereinafter named:

### ARTICLE 1
### Definitions and Certain Basic Provisions

1.1
(a) "Landlord": PRISM PARTNERS, LLC, an Oklahoma limited liability company

(b) "Landlord's Address": 2121 South Columbia Avenue, Suite 650, Tulsa, Oklahoma 74114
Telephone: 918-743-4300; Fax: 918-745-1075

(c) "Tenant": EDGAR R. RODRIGUEZ, an individual

(d) "Tenant's Address": 925 East Avenue J
Grand Prairie, TX 75050-2633

Telephone: _____

(e) "Tenant's Representative": Name: Mo Asad
Title: _____

(f) "Tenant's Trade Name": Carpet and flooring

(g) "Building": 1680 Hickory Drive, Haltom City, Texas 76117

The Building is located at the Property as shown on Exhibit "A" attached hereto and made a part hereof and consisting of approximately 54,636 square feet of gross leasable area.

(h) "Building Address": 1680 Hickory Drive, Haltom City, Texas 76117

(i) "Commencement Date": June 1, 2019

(j) "Possession Date": June 1, 2019

(k) "Expiration Date": July 31, 2024

(l) "Premises": The Premises consists of approximately 54,636 square feet being a portion of the real property and the Building identified on Exhibit "A" and attached hereto and made a part hereof.

(m) "Property": The Property shall mean the following described real property located in the City of Haltom City, Tarrant County, the State of Texas, , as more particularly described on Exhibit "A" and incorporated herein by reference.

(n) "Prepaid Rent": Twenty One Thousand Eight Hundred Twelve Dollars and 30 cents ($21,812.30 = Base Rent $18,212.30, Tax Estimate $3,200.00, Insurance Estimate $400.00), which shall be due and payable to Landlord on or before the execution of this Lease and shall be applied to August 1, 2019.

(o) "Security Deposit": ~~($24,000.00)~~ ($20,000) ER/PM

(p) "Term": Sixty-Two (62) Months commencing on the Commencement Date

(q) "Permitted Use": Warehouse storage and distribution of non-hazardous materials and/or non-hazardous goods including flooring and related materials.

(r) "Special Provisions": Exhibits A, B, C and D are attached hereto and incorporated herein by reference.

1.2 Each of the foregoing definitions and basic provisions should be construed in conjunction with and limited by the references thereto and the other provisions of this Lease.

### ARTICLE 2
### Grant

2.1 In consideration of the rents, covenants and agreements hereinafter reserved and contained on the part of Tenant to be observed and performed, the Landlord leases to Tenant and Tenant leases from Landlord the Premises for the Term.

2.2 Tenant hereby accepts the Premises in their condition existing as of the Commencement Date or the date that Tenant takes possession of the Premises, whichever is earlier, subject to all applicable zoning, municipal, county and state laws, ordinances and regulations governing and regulating the use or occupancy of the Premises and accepts this Lease subject thereto and all matters disclosed thereby and by any exhibits attached hereto. Tenant acknowledges that neither Landlord nor Landlord's agent has made any representation or warranty as to the present or future suitability of the Premises for the conduct of Tenant's business.

1

ARTICLE 3
Use and Improvements

3.1 No use shall be made or permitted to be made of the Premises or the Property other than the Permitted Use. No such Permitted Use, nor acts done on the Premises or the Property, shall be made which will increase the initial rate of insurance on the Premises or the Property, or cause a cancellation of any insurance policy covering the improvements on the Premises or the Property, or any part thereof, nor shall Tenant keep or permit to be kept, or used in or about the Premises or the Property, any article which may be prohibited by the standard form of fire insurance policies. Tenant shall not do or knowingly permit to be done any act or thing upon the Premises or the Property which shall or might subject Landlord to any liability or responsibility for injury to any person or persons or to property by reason of any business or operation of Tenant's being carried on upon the Premises or the Property for any reason. Tenant shall comply with any and all requirements *(of which it has received notice)* pertaining to the Premises or the Property of any insurance organization or company necessary for the maintenance of fire and public liability insurance covering the Premises or the Property except those modifications, additions, or enhancements constituting improvements to the Premises or the Property which shall be the sole responsibility of Landlord and shall be made at Landlord's sole expense. Tenant shall not commit or suffer to be committed any waste upon the Premises or the Property. Tenant shall not use the Premises or Property for any unlawful activity or take any other action which is unlawful or in the exclusive, reasonable judgment of Landlord would constitute a nuisance or would unreasonably disturb any other tenants or result in any objectionable, unpleasant or noxious odors or noise to emanate from the Premises or the Property. Subject to the obligations of Landlord and the other limitations set forth herein, Tenant shall comply with all governmental laws, ordinances, regulations and rules applicable to the use of the Premises or the Property including, without limitation, all applicable, federal, state and local environmental laws, rules and regulations, and shall properly comply with all governmental orders and directives for the correction, prevention and abatement of violations thereof or nuisances, in or upon, or connected with, the Premises or the Property all at Tenant's sole cost and expense. Without Landlord's prior written consent, Tenant shall not install or utilize any underground storage tanks (as such terms are defined by applicable federal, state or local laws, rules and regulations). Tenant shall not permit the Premises or the Property to be used for any purpose or in any manner, including, without limitation, any method of storage, which would violate any applicable environmental or hazardous waste law, rule or regulation.

3.2 Anything in this Lease to the contrary notwithstanding, providing such cause is not due to the intentional act or gross negligence of Landlord, Landlord shall not be deemed in default with respect to the performance of any of the terms, covenants, conditions of this Lease if the same shall be due to any strike, lock-out, civil commotion, warlike operation, invasion, rebellion, hostilities, military or usurped power, sabotage, government regulations or controls, inability to obtain any material, service or financing, snow, rain, muddy conditions, through Act of God or other cause beyond the control of the Landlord

ARTICLE 4
Rent

4.1 "Rent" or "rent" as used herein shall be deemed to consist collectively of (i) "Base Rent", as hereafter defined; and (ii) "Additional Rent" or "additional rent", as hereinafter defined. Tenant shall pay to Landlord Rent as provided herein, at Landlord's Address set forth in Section 1.1(b) or such other address as Landlord may give written notice to Tenant from time to time hereunder, without abatement, deduction, set-off, counter claim, suspension, deferment, demolition or reduction of any kind or for any reason. Rent shall be paid by Tenant to Landlord beginning on the Commencement Date in equal monthly installments, in advance without prior notice or demand, on the first day of every month during the Term of this Lease as follows:

Base Rent during the Term shall be the sum of One Million One Hundred Thirty Six Thousand Nine Hundred Seventy Five Dollars and .13 Cents ($1,136,975.13) payable as follows:

| Months | Monthly Installment Base Rent | Per S.F. | |
|---|---|---|---|
| 06/01/2019-07/31/2019 | $ 0.00 | $ 0.00 | Month 01-02 |
| 08/01/2019-07/31/2020 | $18,212.30 | $ 4.00 | Months 03-14 |
| 08/01/2020-07/31/2021 | $18,576.24 | $ 4.08 | Months 03-14 |
| 08/01/2021-07/31/2022 | $18,940.48 | $ 4.16 | Months 03-14 |
| 08/01/2022-07/31/2023 | $19,304.72 | $ 4.24 | Months 03-14 |
| 08/01/2023-07/31/2024 | $19,714.49 | $ 4.33 | Months 03-14 |

(handwritten annotations: 15-26, 27-38, 31-50, 51-62)

4.2 In the event the Commencement Date is on other than the first day of the month as provided in Section 1.1(i), Tenant shall pay rent for the fractional month on a per diem basis, calculated on the basis of a thirty (30) day month until the first day of the month, thereafter the rent shall be paid during the Term in equal installments on the first day of each and every month in advance. If the Lease terminates on a date other than the last day of a calendar month, then the Rent for such month shall be equitably prorated.

4.3 All costs, expenses, charges and any other sums which Tenant assumes or agrees to pay pursuant to this Lease shall be deemed "Additional Rent", and in the event of non-payment, Landlord shall have all the rights and remedies herein provided for in the case of non-payment of rent or in a breach of condition. If *Tenant fails to cure Tenant's* ~~Tenant shall default in making any payment required to be made by Tenant~~ (other than the payment required in Section 4.1) or shall default in performing any term, covenant or condition of this Lease on the part of the Tenant to be performed which shall involve the expenditure of money of Tenant *within five (5) days after receipt of written notice from Landlord specifying such default, Landlord may*, at Landlord's option may, but shall not be obligated to, make such payment or, on behalf of Tenant, expend such sum as may be necessary to perform and fulfill such term, covenant, or condition, and any and all sums so paid or expended by Landlord, with the interest thereon at the rate of ~~eighteen~~ twelve percent (12 ~~18~~%) per annum from the date of such expenditure, shall be deemed to be additional rent, in addition to all rents otherwise reserved in this Article 4, and shall be repaid by Tenant to Landlord on demand, but no such payment or expenditure by Landlord shall be deemed a waiver of Landlord's rights by reason of such default.

4.4 *In the event Tenant fails to pay any sums due Landlord by Tenant within five (5) days after Tenant receives written notice from Landlord specifying Tenant's failure to pay the same when due and payable,* all sums due Landlord by

2

Tenant hereunder shall bear interest after the same become due and payable and continuing to the date of payment, at the rate of ~~eighteen~~ twelve percent (12 18%) per annum. Failure to pay any such interest as may become due shall entitle Landlord to exercise all of the rights, which Landlord would be entitled to exercise upon Tenant's failure to pay rent. This provision for the payment of interest shall not be in lieu of nor effect any and all other rights to which Landlord may become entitled upon any such failure by Tenant to pay any such sum due hereunder when due.

4.5 "Lease Year" mean each consecutive twelve (12) calendar month period commencing on the date the Commencement Date falls if that day is the first day of a calendar month. If the Commencement Date does not fall due on the first day of a calendar month, then the first Lease Year will commence on the first day of the next succeeding calendar month after the Commencement Date falls, and each Lease Year thereafter shall commence on the anniversary thereof

4.6 Exterior Common Area Maintenance costs, which shall be defined as routine maintenance expenditures limited to actual cash expenditures ~~inclusive of administrative charges or management fees~~, undertaken to repair and preserve and operate the Building, *all of which shall be performed by Tenant and shall be the responsibility of Tenant.* ~~Tenant agrees to pay, as Additional Rent its proportionate share of Exterior Common Area Maintenance costs. During the initial Term and any extension Renewal Term(s), Tenant's proportionate share of Exterior Common Area Maintenance costs in any one Lease Year shall be defined as the sum of zero Cents ($ 0.00) per square foot of gross leasable area of the Premises.~~

4.7 Renewal Option. See Rider 4.7.

## ARTICLE 5
## Taxes

5.1 Tenant shall be liable for all taxes levied against personal property and trade fixtures placed by Tenant in the Premises. If any such taxes are levied against Landlord or Landlord's property, and if Landlord elects to pay the same, or if the assessed value of Landlord's property is increased by the inclusion of personal property and trade fixtures placed by Tenant in the Premises and Landlord elects to pay the taxes based on such increase, Tenant shall pay Landlord upon demand no later than fifteen (15) days upon Tenant's receipt of an invoice as additional rent that part of such actual taxes for which Tenant is primarily liable hereunder, subject to Tenant's right to protest any such assessment of personal property and/or trade fixtures placed by Tenant. Any invoice for taxes will be accompanied by a copy of the invoice from the relevant taxing authority.

5.2 If at any time during the Term, a tax or excise on rents or tax, however described (except any franchise, state, inheritance, income or excess profits tax imposed on Landlord) is levied or assessed upon Landlord by any lawful taxing authority on account of Landlord's interest in the Lease or the rents or other charges reserved hereunder, as a substitute in whole or in part, or in addition to the general taxes described in this Article 5, Tenant assumes full responsibility of such taxes and agrees to pay Landlord upon demand no later than fifteen (15) days upon Tenant's receipt of an invoice, as additional rent, the amount of such tax or excise. In the event any such tax or excise if levied or assessed directly against Tenant, then Tenant shall be responsible for and shall pay the same at such time and in such manner as the taxing authority shall require. Any invoice for taxes will be accompanied by a copy of the invoice from the relevant taxing authority.

5.3 Tenant agrees, during the Term and any Renewal Term, to pay ~~100%~~ of its proportionate share (equal to the Premises' portion of the total square footage of the Building) of the taxes and special assessments levied against the Premises, including but not limited to, Ad Valorem Taxes directly to the taxing authority. At Landlord's option, the reimbursement shall either be payable *fifteen (15)* ~~ten (10)~~ days after presentation of receipts marked paid in full or, after written notice by Landlord to Tenant, Tenant shall make a monthly payment to Landlord for an estimate of Tenant's proportionate share of the amounts due under this paragraph which will be due and payable for that particular year. Any invoice for taxes will be accompanied by a copy of the invoice from the relevant taxing authority.

5.4 The term "Real Property Taxes" shall include all taxes and assessments (excluding, however, all general income tax, gift tax, franchise tax, inheritance tax, succession tax, excise profit tax, and estate tax) imposed upon Landlord for the Premises. Any tax or excise on rents or any other tax, however, described, levied against Landlord on account of rent hereunder, and *the first $2,000.00 of* ~~all~~ reasonable ~~costs, including~~ legal fees or consulting fees incurred in contesting such taxes such or seeking a reduction in such taxes shall be deemed included in the term "Real Property Taxes" *if such contest is successful in reducing the amount of taxes assessed.* Notwithstanding any provision contained herein to the contrary, the sole liability of Tenant in the payment of any taxes, assessments, excise on rents, levies and any and *the first $2,000.00 of* ~~all~~ reasonable ~~costs, including~~ legal fees or consulting fees incurred in contesting such taxes or seeking a reduction in such taxes shall be only such costs specifically designated to the Premises.

5.5 In the event that any bills or statements issued by any taxing authority with regard to the Premises is received by Tenant, Tenant shall within *fifteen (15)* ~~ten (10)~~ business days forward the same to Landlord in the manner provided for the giving of notices herein.

## ARTICLE 6
## Insurance and Indemnity

6.1 (a) Liability Insurance- Tenant- Tenant shall, at Tenant's sole expense, obtain and keep in force during the Term and any extensions thereof a policy of Combined Single Limit Bodily Injury and Property Damage Insurance insuring Tenant and Landlord against any liability arising out of the use, occupancy or maintenance of the Premises and all other areas appurtenant thereto. Such insurance shall be in an amount not less than $2,000,000.00 per occurrence. The policy shall insure performance by Tenant of the indemnity provisions of this Article 6 The limits of said insurance shall not, however limit the liability of Tenant hereunder.

(b) Product Liability Insurance- Tenant Tenant shall, at Tenant's sole expense, obtain and keep in force during the Term a policy of product liability insurance insuring Tenant and Landlord against any liability arising out of the damage to anything brought into or stored in Premises by Tenant in an amount not less than $2,000,000.00 per occurrence.

(c) Worker's Compensation Insurance- Tenant Tenant shall, at Tenant's sole expense, obtain and keep in force worker's compensation insurance insuring against and satisfying Tenant's obligations and liabilities under the

3

worker's compensation laws of the state where the property is located, including employer's liability insurance limits required by the laws of the state where the property is located.

    (d)    Automobile Liability Insurance- Tenant. Tenant shall, at Tenant's sole expense, obtain and keep in force during the Term a comprehensive automobile liability policy, a limit of liability not less than Five Hundred Thousand and No/100 Dollars ($500,000.00) combined bodily injury and property damage.

6.2    Liability Insurance- Landlord. Landlord shall obtain and keep in force during the term a policy of Combined Single Limit Bodily Injury and Property Damage Insurance, insuring Landlord, but not Tenant, against any liability arising out of the ownership, use, occupancy or maintenance of the Property and all areas appurtenant thereto in an amount not less than $2,000,000.00 per occurrence.

6.3    (a)    Property Insurance- Landlord shall obtain and keep in force during the term and any extensions thereof a policy or policies of insurance covering loss or damage to the Property, but not Tenant's personal property, inventory, trade fixtures, furnishings, equipment, tenant improvements, or property of others brought onto the Property by or for Tenant in an amount not less than the full replacement value thereof, as the same may exist from time to time, providing protection against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, flood (in the event same is required by a lender having a lien on the Property) special extended perils ("all risk", as such term is used in the insurance industry) but not plate glass insurance. Further, Tenant shall pay to Landlord, during the Term, as additional rent, its proportionate share of any deductible required to be paid by Landlord as a result of a claim paid under Landlord's insurance required under this Article 6.

    (b)    Property Insurance- Tenant. Tenant, at its sole cost and expense shall keep all personal property, trade fixtures, furnishings, equipment, or other improvements placed in, on or about the Premises or the Property insured for the benefit of Landlord and Tenant against loss or damage by fire, casualty and all available extended coverage or other hazards, in an amount not less than one hundred percent (100%) of the replacement costs thereof at any given time.

6.4    (a)    Tenant shall pay to Landlord, during the Term, as additional rent, the Tenant's proportionate share (equal to the Premises' portion of the total square footage of the Building) of the premiums for the insurance required under Section 6.2 and 6.3(a). However, notwithstanding the foregoing, Tenant shall pay any increase that is the result of the nature of Tenant's use/or occupancy, or any act or omission of Tenant.

    (b)    At Landlord's option, Tenant shall either pay any such premium increases to Landlord within thirty (30) days after the receipt by Tenant of a copy of the premium statement or other satisfactory evidence of the amount due or, after written notice by Landlord to Tenant, Tenant shall make a monthly payment to Landlord for an estimate of the amounts due under this paragraph which will be due and payable for that particular year. If the insurance policies maintained hereunder cover other improvements in addition to the Premises, Landlord shall also deliver to Tenant a statement of the amount of such increase attributable to the Premises and showing in reasonable detail the manner in which such amount was computed. If the Term shall not expire concurrently with the expiration of the period covered by such insurance, Tenant's liability for premium increases shall be prorated on an annual basis.

6.5    Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A *minus plus* or such other rating as may be required by a lender having a lien on the Premises, as set forth in the most current issue of "Best's Insurance Guide." Tenant shall deliver to Landlord ~~copies of policies of liability insurance required under this Article 6 or~~ certificates evidencing the existence and amounts of such insurance *required under this Article 6*. ~~No such policy shall be cancelable or subject to reduction of coverage or other modifications except after thirty (30) days' prior written notice to Landlord.~~ Tenant shall *endeavor to, at least thirty (30) days prior to the expiration of such policies,* furnish Landlord with *renewal certificates of insurance within 30 days post renewal of such policies* ~~renewals of "binders"~~ thereof, or Landlord may order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant upon demand. Tenant shall not do or permit to be done anything, which shall invalidate the insurance policies, referred to in Article 6.

6.6    Tenant and Landlord each hereby release the other, and waive their entire right of recovery against the other for loss or damage arising out of or incident to the perils insured against under Article 6, which perils occur in, on or about the Premises, or any other part of the Property, whether due to the negligence of Landlord or Tenant or their agents, employees, contractors and/or invitees to the extent that the same are covered by the proceeds from such insurance. Tenant and Landlord shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carrier or carriers that the foregoing mutual waiver of subrogation is contained in this Lease.

6.7    Tenant shall indemnify and hold harmless Landlord from and against any and all claims arising from Tenant's use or occupancy of the Premises, or from the conduct of Tenant's business or from any activity, work or things done, permitted or suffered by Tenant in or about the Premises and shall further indemnify and hold harmless Landlord from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any acts or negligence of the Tenant, or any of Tenant's agents, contractors or employees and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon; and in case any action or proceeding be brought against Landlord by reason of any such claim, Tenant upon notice from Landlord shall defend the same at Tenant's expense. Tenant, as a material part of the consideration to Landlord, hereby assumes all risk of damage to property or injury to person, in, upon or about the Premises or the Property arising from any cause, and Tenant hereby waives all claims in respect thereof against Landlord.

6.8    Tenant hereby agrees that Landlord shall not be liable for injury to Tenant's business or any loss of income therefrom or for damage to the goods, wares, merchandise or other property of Tenant, Tenant's employees, agents, invitees, customers or any other person in or about the Premises or the Property, nor shall Landlord be liable for injury to the person of Tenant, Tenant's employees, agents, invitees, customers or contractors, whether such damage or injury is

4

caused by results from fire, steam, electricity, gas, water or rain or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning, refrigeration equipment, or lighting fixtures or from any other cause, whether the said damage or injury results from conditions arising upon the Premises or upon other portions of the Property, or from other sources or places and regardless whether the cause of such damage or injury or the means of repairing the same is inaccessible to Tenant. Landlord shall not be liable for any damages arising from any act or neglect of any other tenant, if any, of the Property in which the Premises are located. Notwithstanding anything contained herein to the contrary, Landlord shall not be liable for injury to Tenant's business or any loss of income therefrom.

## ARTICLE 7
### Utilities and Services

7.1 Prior to possession of the Premises, Tenant shall place all utilities serving the Premises in its name and pay and discharge punctually as and when the same become due and payable, all charges and sums of every kind, whether ordinary or extraordinary, for utilities (including, without limitation, water, steam, heat, gas, hot water, electricity, light and power), storm water serving the Premises

## ARTICLE 8
### Default and Remedy Provisions ~~and Landlord's Lien~~

8.1 Each of the following events shall be a default of Tenant and a breach of this Lease:

(a) Failure or refusal to pay, within five (5) days *after receipt of written notice of overdue payment ~~of when due any installment~~* of rent or any other sum required by this Lease to be paid by Tenant

(b) Failure or refusal to perform any condition or covenant required by Tenant to be performed under this Lease or conditioned by any other covenant or condition of this Lease other than the payment of rent or any other sums hereunder, for more than *thirty (30)* ~~twenty (20)~~ days after written notice. See Rider 8.1(b)

(c) The subjection of any right or interest of Tenant to attachment, execution or other levy or to seizure under legal process is not released within thirty (30) days *after Tenant's receipt of notice of the same*

(d) The filing of a lien against the Premises *by Tenant's creditors*, if Tenant has not obtained a discharge or bonded over within ~~ten (10)~~ *thirty (30)* days *of receipt of notice of the same*. Tenant shall have the right to post bond to discharge any such lien.

(e) The appointment of a receiver to take possession of the Premises and/or improvements or of Tenant's interest in the leasehold estate for any reason, including but not limited to, assignment for benefit of creditors of voluntary bankruptcy proceedings, but not including a receivership instituted by Landlord, the event of default being not the appointment of a receiver of Landlord's instance, but the event justifying the receivership, if any.

(f) Assignment by Tenant for the benefit of creditors or the filing of a voluntary action or involuntary action by or against Tenant under any law for the purpose of adjudicating Tenant bankrupt; or for extending time for payment, adjustment, or satisfaction of Tenant's liability; or for reorganization, dissolution, or arrangement on account of or to prevent bankruptcy or insolvency; unless the assignment or proceedings and all consequent orders, adjudications, custodies, and supervisions are dismissed, vacated or otherwise permanently stayed or terminated within forty-five (45) days after the assignment, filing, or other initial event.

8.2 If any default by Tenant shall continue uncured, Landlord has the following remedies in addition to all other rights and remedies, provided by law, equity, or both, to which Landlord may resort cumulatively or in the alternative:

(a) Landlord may, at Landlord's election, terminate this Lease by giving Tenant notice of termination. On the giving of the notice, all Tenant's rights in the Premises and in all improvements shall terminate. Promptly after notice of termination, Tenant shall surrender and vacate the Premises with all improvements in good repair, order and condition, reasonable wear and tear, excepted, and in broom clean condition, and Landlord may re-enter and take possession of the Premises and all remaining improvements and eject all parties in possession, or eject some and not others, or eject none. Termination or ejectment under this paragraph shall not relieve Tenant from the payment of any sum then due to Landlord or from any claim for damages previously accrued or then accruing against Tenant.

(b) Landlord may, without terminating this Lease, at Landlord's election, re-enter the Premises, either peaceably or through legal process and without terminating this Lease, at any time and from time to time relet the Premises and improvements or any part or parts of them for the account and in the name of Tenant or otherwise at such rental and upon such terms and conditions as Landlord in its sole discretion may deem advisable including, but not limited to, consideration of the then current commercial rate. Landlord may, at Landlord's election, by legal process without terminating this Lease, eject all persons, or eject some and not others, or eject none. Any reletting may be for the remainder of the Term or for a longer or shorter period. Landlord shall be entitled to all rents from the use, operation or occupancy of the Premises or improvements or both. No act by or on behalf of Landlord under this provision shall constitute a termination of this Lease unless Landlord gives Tenant notice of termination. Even if Tenant has breached the Lease and abandoned the Premises, the Lease continues in effect for so long as Landlord does not judicially terminate the Tenant's right to possession or give Tenant notice of termination pursuant to Section 15.1 and the Landlord may enforce all of its rights and remedies under the Lease, less any rents collected from any reletting, including the right to recover rent as it becomes due under the Lease.

(c) It is hereby expressly agreed that if Tenant defaults in payment of rent, such being primary consideration and obligation of Tenant under this Lease, on the day that the same becomes due and payable, and such default continues for more than five (5) days after Notice of Default is given to Tenant, that Landlord shall have the right to elect, without further notice, that the present value (discounted at ten percent) (10%) of the entire amount of rent or adjusted rent that Landlord would be entitled to receive during the Term, then remaining un-accrued and unpaid

5

shall become due and payable forthwith. This right is granted in addition to other remedies herein provided and Landlord may enforce the payment of the entire sum provided for herein.

(d) ~~Landlord may, at Landlord's election, use Tenant's personal property and trade fixtures or any of such property and fixtures without compensation and without liability for use or damage, or store them for the account and at the cost of Tenant. The election of one remedy for any one incident of default shall not foreclose an election of any other remedy for another default or for the same default at a later time.~~

(e) Tenant assigns to Landlord all sub rents and other sums falling due from subtenants during any period in which Landlord has the right under this Lease, whether exercised or not, to re-enter the Premises for Tenant's default, and Tenant shall not have any right to such sums during that period. Landlord may, at Landlord's election, re-enter the Premises with or without process of law, without terminating this Lease, and/or collect these items or bring action for the recovery of the sums directly from such obligors. Landlord shall receive and collect all sub rents from reletting, applying them: (1) to the payment of reasonable expenses (including brokers' commissions or both) paid or incurred by or on behalf of Landlord in recovering possession, placing the Premises and improvements in good condition and preparing or altering the Premises for reletting; (2) to the reasonable expense of securing a new Tenant; (3) to the fulfillment of Tenant's covenants to the end of the Term; and (4) to Landlord's uses and purposes Tenant shall nevertheless pay to Landlord on the due date specified in this Lease the equivalent of all sums reasonably required by Tenant under these provisions. Landlord may proceed to collect either the assigned sums of Tenant's balance and/or any installment or installments of them either before or after the expiration of the Term, but the period of limitations shall not begin to run on the payments of the assigned sums respective obligors.

(f) It is hereby expressly agreed that this Lease is both a lease and a contract, and the eviction of Tenant from the Premises through legal process or otherwise pursuant to the provisions of Section 8.2 shall not terminate Tenant's contractual obligations for payment thereunder Article 4 of this Lease but if Landlord relets the Premises pursuant to the terms of this Lease, Tenant shall only be liable for the difference between the Base Rent and the amounts received by Landlord as a result of any reletting plus the cost associated with reletting including but not limited to Tenant Improvements and Leasing Commissions This provision shall not limit or affect Landlord's right to other amounts as provided elsewhere in this Lease.

(g) No act or conduct of Landlord, whether consisting of the acceptance of the keys to the Premises, or otherwise, shall be deemed to be or constitute an acceptance of the surrender of the Premises by the Tenant prior to the expiration of the Term, and such acceptance by the Landlord or surrender by the Tenant shall only flow from and must be evidenced by a written acknowledgment of acceptance of surrender signed by Landlord. A proper surrender of this Lease by the Tenant, voluntary or otherwise, shall not work a merger but shall operate as an assignment to the Landlord of any and all existing subleases or the Landlord may, at its option, terminate any and all such subleases by notifying the subtenants of its election to do so within five (5) days after such surrender.

(h) In the event Tenant fails to pay any installments of Rent hereunder within *five (5) days after written notice from Landlord to Tenant* ~~five (5) days of when such installment is due~~, to help defray the additional cost to Landlord for processing such late payments, Tenant shall pay Landlord on demand a late charge in amount equal to the greater of Five Hundred and 00/100 Dollars ($500.00) ~~or five percent (5%) of such installment~~ and failure to pay such amount within ten (10) days after demand therefore should be an additional event of default hereunder The provision for such late charge shall be in addition to all of Landlord's other rights and remedies hereunder or at law or equity and shall not be construed as liquidated damages or as otherwise limiting Landlord's remedies in any manner.

(i) Upon receipt from Tenant of the Security Deposit, which sum is due and payable on or before the date hereof, such Security Deposit shall be held by Landlord without interest as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that such Security Deposit is not an advance payment of rent or a measure of Landlord's damage in case of default by Tenant If at any time during the Term any of the rent herein reserved shall be overdue and unpaid then Landlord may, at its option, apply any portion of the Security Deposit to the payment of any such overdue rent or other sum. In the event of the failure of Tenant to keep and perform all the other terms, covenants and conditions of this Lease to be kept and performed by Tenant, then Landlord, at its option, may apply the Security Deposit, or so much thereof as may be necessary, to compensate Landlord for loss, costs, or damage sustained, incurred or suffered by Landlord due to such breach on the part of Tenant. Should the Security Deposit, or any portion thereof be applied by Landlord as herein provided, Tenant shall, upon written demand of Landlord, remit to Landlord a sufficient amount by cashier's check to restore the Security Deposit to the original amount, and Tenant's failure to do so within ten (10) days after receipt of such demand shall constitute a default under this Lease. Any remaining balance of such deposit shall be returned by Landlord to Tenant at such time after all of Tenant's obligations under this Lease have been fulfilled

## ARTICLE 9
### Alterations and Maintenance

9 1 Except as stated in this Section 9 1, Tenant shall, at Tenant's sole cost and expense, repair, maintain and keep the Premises and all buildings, improvements, loading docks, and water lines now or hereafter located thereon and all facilities and equipment thereon, including, but not limited to, heating and air conditioning systems, electrical systems, plumbing systems and other building systems, fixtures, interior walls, interior columns and supports, windows, doors, plate glass, non-structural floors, ceilings, signs (including exterior signs, if permitted), any sprinkler system, interior building appearance and the like, and all appurtenances to the Premises in good operating condition and repair, replace and alter as may be required by law or by the terms of the insurance policies furnished pursuant to Article 6 hereof, whether or not such repair, replacement, or alteration to be interior or exterior, extraordinary as well as ordinary, whether or not same shall be of a structural nature, and whether or not the same can be said to be within the present contemplation of the parties hereto; Landlord shall, at Landlord's sole cost and expense, maintain in good condition, normal wear and tear accepted, the roof, the foundation, load bearing and the structural soundness of the exterior walls (but not glass or doors) of the building located upon the Premises. Provided Tenant shall repair and pay for any damage to the roof, foundation, load

bearing and structural soundness of the exterior walls of any building upon the Premises or Property caused by Tenant, Tenant's employees, agents, guests or invitees, or caused by Tenant's default hereunder

9.2 In the event Tenant refuses or neglects to complete properly or inadequately completes any repairs or maintenance which are the responsibility of Tenant hereunder, then Landlord may (but should not be obligated to) make such repairs after ten (10) working days written notice to Tenant *if Tenant fails to correct such improperly or inadequately completed repairs or maintenance within such time*, or *after* such shorter period as required by an emergency. In such event, Tenant shall be obligated to repay the *reasonable* cost thereof to Landlord, upon demand, as additional rent.

9.3 Tenant shall not make any alterations, additions or improvements to the Premises, or any part thereof ("Alterations"), without Landlord's prior written consent, which consent shall not be unreasonably withheld. All Alterations shall be done in a good and workmanlike manner by qualified and licensed contractors or mechanics. All such contractors or mechanics shall waive any and all lien rights that they may have against the Premises prior to beginning any work. In no event shall any Alterations affect the structure of the Premises or its exterior appearance. Landlord shall have the right at all times to post on the Premises any notices permitted or required by law, or that Landlord shall deem proper, for the protection of Landlord, the Premises, and any other party having an interest therein, from mechanics' and materialmen's liens, and Tenant shall give to Landlord at least ten (10) day notice of commencement of any construction on the Premises. At the termination of this Lease, Tenant agrees that such Alterations shall be and remain the Property of Landlord or that Tenant shall remove the same at Tenant's sole cost and expense, if directed to do so by Landlord, unless Landlord has otherwise agreed to in writing, at the time of written request and installation. See Rider 9.3

9.4 Tenant shall keep the Premises free from any liens arising out of any work performed, furnished or obligations incurred by or for Tenant.

9.5 Tenant covenants and agrees that it will pay or cause to be paid all sums legally due and payable by it on account of any labor performed or materials furnished in connection with any work performed on the Premises on which a lien is or can be validly and legally asserted against its leasehold interest in the Premises or the improvements thereon and that it will save and hold Landlord harmless from any and all loss, cost or expense based on or arising out of asserted claims or liens against the leasehold estate or against the right, title and interest of the Landlord in the Premises or under the terms of this Lease, and shall discharge any such lien by payment, bonding, or other security reasonably satisfactory to Landlord within ~~twenty (20)~~ *thirty (30)* days after filing, failing which Landlord shall have the right, but not the obligation, in addition to all other remedies to discharge such lien at Tenant's expense and Landlord's cost thereof, plus interest thereupon, at ~~eighteen~~ twelve percent (12 ~~18~~%), and shall be reimbursed by Tenant upon demand as additional rent hereunder.

9.6 Tenant hereby agrees that (i) no activity shall be conducted on the Premises that will produce any Hazardous Substance(s), and (ii) the Premises shall not be used in any manner for the storage of any Hazardous Substances except for the temporary storage of such materials that are used in the ordinary course of Tenant's business, provided any such Hazardous Substances shall be properly stored and used in a manner meeting all Environmental Laws. The term "Environmental Laws" shall include, without limitation, the Clean Air Act, 42 U.S.C. §7401 et seq.; the Clean Water Act, 33 U.S.C. §1251 et seq., and the Water Quality Act of 1987; the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §136 et seq.; the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. §1401 et seq., the National Environmental Policy Act, 42 U.S.C. §4321 et seq., the Noise Control Act, 42 U.S.C. §4901 et seq., the Occupational Safety and Health Act, 29 U.S.C. §651 et seq., the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C §6901 et seq., as amended by the Hazardous and Solid Waste Amendments of 1984; the Safe Drinking Water Act, 42 U.S.C. §300f et seq., the Comprehensive Environmental Response, Compensation and liability Act ("CERCLA"), 42 U.S.C §9601 et seq., as emended by the Superfund Amendments and Reauthorization Act, and the Emergency Planning and Community Right-to-Know Act; the Toxic Substance Control Act ("TSCA"), 15 U.S.C. §2601 et seq., and the Atomic Energy Act, U.S.C. §2011 et seq., all as may have been amended as of the date of this Lease, together with their implementing regulations and guidelines as of the date of this Lease. The term "Environmental Laws" shall also include all state, regional, county, municipal and other local laws, regulations, and ordinances that are equivalent or similar to the federal laws recited above or that purport to regulate Hazardous Materials. The term "Hazardous Materials" shall include, without limitation, any hazardous substance, pollutant, or contaminant regulated under CERCLA; oil and petroleum products and natural gas, natural gas liquids, liquefied natural gas, and synthetic gas usable for fuel; pesticides regulated under FIFRA, asbestos, polychlorinated biphenyl, and other substances regulated under TSCA; source material, nuclear material, and by-product materials regulated under the Atomic Energy Act; and industrial process and pollution control wastes to the extent regulated under applicable Environmental Laws. If at any time, the Premises is found to be so contaminated or subject to such conditions as the result of Tenant's use and occupancy of the Premises, Tenant agrees to indemnify, defend and hold Landlord harmless from all claims, demands, actions, liabilities, judgments, costs, expenses, assessments, damages or obligations of any nature arising from or as a result of the use of the Premises by Tenant. The foregoing indemnification shall survive the termination or expiration of this Lease. See Rider 9.6

9.7 Subject to Landlord's prior written consent and the applicable signage ordinances and regulations of the municipality and county, Tenant may erect its standard signs on the exterior of the Premises in a manner and location satisfactory to Landlord. Tenant shall install its signs on its own expense and shall remove them at the termination of this Lease. Any damage to the Premises as a result of the placing or removal of Tenant's signs shall be repaired at the expense of Tenant

9.8 Tenant shall immediately notify Landlord and promptly furnish Landlord with copies of any notice(s) that Tenant receives that the Premises or Tenant's use, operation or control thereof violates any laws, rules and regulations of any federal, state, county or city government or agency, body or subdivision thereof having any jurisdiction over the Premises.

9.9 Tenant agrees to surrender the Premises at the termination of this Lease in the same condition as received, broom clean, ordinary wear and tear, un-repaired casualty not caused by Tenant and condemnation excepted. Tenant agrees and covenants to keep the Premises in a neat, clean and sanitary condition. Tenant further agrees and covenants not to commit or suffer to be committed any waste upon the Premises. Tenant further agrees that at the termination of the Lease, that Tenant shall remove all trash, debris, shavings and other waste from the Lease Premises. Tenant further agrees that at the termination of this Lease, Tenant shall sweep and vacuum the floors, and remove all oils, lubricants, coolants, solvents, and Hazardous Materials, from the Premises

7

## ARTICLE 10
### Assignment, Subletting and Holding Over

10.1 Tenant shall not assign, sublease, transfer or encumber this Lease or any interest therein without the prior written consent of Landlord, such consent may *not be unreasonably withheld* be withheld for any reason. Notwithstanding any such assignment, subletting or transfer, Tenant and any guarantor of Tenant's obligations under this Lease shall at all times remain fully and primarily responsible and liable for the payment of the rental herein specified and for compliance with all its other obligations under this Lease. Any attempted assignment, sublease, transfer or encumbrance by Tenant in violation of the terms of this Section 10.1 shall be voidable by Landlord. The foregoing covenants of this Section 10.1 shall run with the land and shall bind Tenant and Tenant's successors and assigns and representatives in any bankruptcy proceedings. Any assignee, sublease, or transferee of Tenant's obligations hereunder shall assume liability to Landlord of all amounts paid to persons other than Landlord by such successors in contravention of this Section 10.1.

10.2 If after the expiration of the Term, Tenant shall remain in possession of the Premises and continue to pay rent without any express written agreement as to its possession (except for this Lease), then such possession shall be deemed a tenancy at will and shall be subject to all terms and conditions of this Lease on the part of both Tenant and Landlord to be observed and performed at a Base Rent equivalent to one hundred twenty-five fifty percent (125%) of the Base Rent paid for the last month of the Term, payable in advance on the first day of each calendar month, plus any other costs, taxes, charges or expenses required to be paid hereunder for the first three (3) months of any hold over period. The foregoing shall not constitute Landlord's consent for Tenant to holdover. In the event Tenant fails to surrender the Premises upon termination or expiration of this Lease or its tenancy at will, Tenant shall also indemnify Landlord against loss or liability resulting from any delay of Tenant in not surrendering the Premises, including, but not limited to any part thereof to third parties who were to have occupied the Premises and any reasonable attorneys' fees related thereto.

## ARTICLE 11
### Attorneys' Fees

11.1 In case Tenant defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease Agreement, and Landlord places the enforcement of this Lease Agreement, or any part thereof, or the collection of any rent due, or to become due hereunder or recovery of the possession of the Premises in the hands of an attorney or files suit upon the same, Tenant agrees to pay Landlord's reasonable attorney's fees, and payment of the same shall be secured in like manner as is herein provided, as to all remedies which may be invoked by Landlord to secure payment of rent.

## ARTICLE 12
### Eminent Domain and Destruction of Premises

12.1 If all of the Premises shall be taken, acquired, condemned by or conveyed to any authority for any public use or purpose, with or without litigation, the Term hereby granted shall cease on the day prior to the taking of possession by such authority or on the day prior to the vesting of title in such authority, whichever first occurs, and rent hereunder shall be paid to and adjusted as of that day.

If a portion of the Premises shall be so acquired, condemned, conveyed or taken and, as a result thereof, there shall be a major change in the character of the Premises as to prevent or materially interfere with Tenant from using the same for substantially the same purposes as theretofore used, then and in that event, either party *Tenant* may cancel and terminate this Lease by written notice given to *Landlord* the other, as of the date when the part of the Premises so acquired, taken, conveyed or condemned shall be required for such public purpose, or the Tenant may continue to occupy the remaining portion, provided, however, *that Tenant* each party shall give written notice of its election to *Landlord* the other within fifteen (15) days after the date of any taking or vesting of title. In the event that Tenant shall remain in possession and occupation of the remaining portion, all the terms, conditions and provisions of this Lease shall remain in full force and effect with respect to such remaining portion except that the rent reserved to be paid hereunder shall be equitably adjusted according to the amount of such remaining space; and provided, further, that Landlord shall, at Landlord's sole cost and expense, promptly and with all reasonable diligence perform such work as to make a complete architectural unit out of the remainder of the building or buildings, as the case may be, on the Premises and this Lease shall continue for the balance of its Term, subject to the terms and conditions herein stated.

The entire award of damages or compensation for the Premises taken (including the temporary taking), or the amount paid pursuant to private purchase in lieu thereof, whether such condemnation or sale be total or partial, shall belong to and be the property of Landlord, whether such damages be awarded as compensation for diminution in value of the leasehold or the fee of the Premises and Tenant hereby assigns to Landlord all of Tenant's right, title and interest in and to any and all such award or purchase price other than Excluded Awards. Nothing herein contained shall be deemed or construed to prevent Tenant from interposing or prosecuting in any condemnation proceeding a claim for the value of any trade fixtures installed in the Premises by Tenant, and in the case of partial condemnation of the Premises, the cost, loss or damages sustained by Tenant as a result of any alterations, modifications or repairs which may be reasonably required by Tenant in order to place the remaining portion of the Premises not so condemned in a suitable condition for Tenant's further occupancy; provided, however, that Tenant's claim shall be in addition to and not a reduction of any claim for the property of Landlord.

12.2 (a) "Premises Partial Damage" shall herein mean damage or destruction to the Premises to the extent that the cost of repair is less than 50% of the fair market value of the Premises immediately prior to such damage or destruction. "Premises Building Partial Damage" shall herein mean damage or destruction to the Building to the extent that the cost of repair is less than 50% of the fair market value of the Building immediately prior to such damage or destruction.

(b) "Premises Total Destruction" shall herein mean damage or destruction to the Premises to the extent that the cost of repair is 50% or more of the fair market value of the Premises immediately prior to such damage or destruction. "Premises Building Total Destruction" shall herein mean damage or destruction to the Building to the extent that the cost of repair is 50% or more of the fair market value of the Building immediately prior to such damage or destruction.

8

(c) "Insured Loss" shall herein mean damage or destruction which was caused by an event required to be covered by the insurance described in Article 6.

(d) "Uninsured Loss" shall herein mean damage or destruction which was caused by an event not required to be covered by the insurance described in Article 6.

12.3 Partial Damage-Insured Loss. Subject to the provisions of Sections 12.5, 12.6, 12.7 and 12.10, if at any time during the Term or any extensions thereof there is damage which is an Insured Loss and which falls into the classification of Premises Partial Damage or Premises Building Partial Damage, then Landlord shall, at Landlord's sole cost, repair such damage, but not Tenant's personal property, inventory, trade fixtures, furnishings, equipment or tenant improvements, as soon as reasonably possible and this Lease shall continue in full force and effect.

12.4 Partial Damage- Uninsured Loss. Subject to the provisions of Section 12.5, 12.6, 12.7 and 12.10, if at any time during the Term or any extensions thereof there is damage which is an Uninsured Loss and which falls within the classification of Premises Partial Damage or Premises Building Partial Damage, unless caused by the acts or negligence of Tenant (in which event Tenant shall make the repairs at Tenant's sole cost and expense and there shall be no abatement of rent), Landlord may at Landlord's option either (i) repair such damage as soon as reasonably possible at Landlord's expense, in which event this Lease shall continue in full force and effect, or (ii) give written notice to Tenant within thirty (30) days after the date of the occurrence of such damage of Landlord's intention to cancel and terminate this Lease, as of the date of the occurrence of such damage. In the event Landlord elects to give such notice of Landlord's intention to cancel and terminate the Lease, Tenant shall have the right within fifteen (15) days after the receipt of such notice to give written notice to Landlord of Tenant's intention to repair such damage at Tenant's expense, without reimbursement from Landlord for such repairs, as soon as reasonably possible. If Tenant does not give such notice within such fifteen (15) day period, this Lease shall be canceled and terminated as of the date of the occurrence of such damage.

12.5 Total Destruction. If at any time during the Term or any extensions thereof there is damage, whether or not an Insured Loss (including destruction required by any authorized public authority), which falls in to the classification of Premises Total Destruction or Premises Building Total Destruction, this Lease shall automatically terminate as of the date of such total destruction.

12.6 Damages Near The End of Term. If at any time during the last six (6) months of the Term or any exercised renewal extensions thereof there is damage, whether or not an Insured Loss, which falls within the classification of Premises Partial Damage, Landlord may at Landlord's option cancel and terminate this Lease as of the date of occurrence of such damage by giving notice to Tenant of Landlord's election to do so within thirty (30) days after the date of occurrence of such damage. In the event this Lease is so terminated, all insurance payable under the insurance policy (as provided by Landlord) pursuant to Article 6 by reason of such damage or destruction shall be the sole property of Landlord

12.7 Abatement of Rent; Tenant's Remedies

(a) In the event of damage described in Section 12.3 or 12.4 and Landlord or Tenant repairs or restores the Premises pursuant to the provisions of this Article 12, the rent payable hereunder for the period during which such damage, repair or restoration continues shall be abated in proportion to the degree to which Tenant's use of the Premises is impaired. Except for abatement of rent, if any, Tenant shall have no claim against Landlord for any damage suffered by reason of any such damage, destruction, repair or restoration. Notwithstanding the foregoing, rent shall not be abated if any such damage was caused by the acts or negligence of Tenant.

(b) If Landlord shall be obligated to repair or restore the Premises under the provisions of this Article 12 and shall not commence such repair or restoration within forty five (45) days after such obligations shall accrue, Tenant may at Tenant's option cancel and terminate this Lease by giving Landlord written notice of Tenant's election to do so at any time prior to the commencement of such repair or restoration. In such event this Lease shall terminate as of the date of such notice.

12.8 Upon termination of this Lease pursuant to this Article 12, an equitable adjustment shall be made concerning advance rent and any advance payments made by Tenant to Landlord.

12.9 Landlord and Tenant waive the provisions of any statutes which relate to termination of leases when leased property is destroyed and agree that such event shall be governed by the terms of this Lease.

12.10 In the event the holder of any indebtedness secured by a mortgage or deed of trust covering the Premises and any part of the Property requires that the insurance proceeds be applied to such indebtedness, then Landlord shall have the right to terminate this Lease by delivering written notice of termination to Tenant within twenty (20) days after such requirement is made by any such holder, whereupon all rights and obligations hereunder shall cease and terminate (except those which have accrued prior to termination or which otherwise specifically survive), including, without limitation, any obligation of Landlord to repair and/or rebuild the Premises.

12.11 In the event Landlord or Tenant elects to terminate this Lease, all insurance proceeds payable under the insurance policies provided by Landlord pursuant to Article 6 by reason of such casualty, damage or destruction shall be the sole property of Landlord.

### ARTICLE 13
### Entry and Compliance With Laws

13.1 Landlord shall have the right to enter the Premises during normal business hours or with prior arrangement with Tenant (except in the case of an emergency, in which no prior notification shall be required), to inspect the same and supply any service to be provided by Landlord to Tenant hereunder, to submit the Premises to prospective purchasers, mortgagees at any time during the Term and to prospective replacement tenants within six (6) months prior to the end of the Term or any extensions thereof, to post notices of non-responsibility and to alter, improve and repair the Premises and any portion of the improvements of which the Premises are a part that Landlord may deem necessary to desirable.

9

without abatement of rent and may for that purpose erect scaffolding and other necessary structures when reasonably required by the character of the work performed, provided that the Premises shall be accessible at all times, and further provided that the business of Tenant shall not be interfered with unreasonably. Tenant hereby waives any claim for damages or for injury or inconvenience to or interferences with Tenant's business, any loss of occupancy or quiet enjoyment of the Premises, and any other loss occasioned thereby. Any entry to the Premises by Landlord for any of said reasons shall not under any circumstances be construed or deemed to be forceful or unlawful entry into, or a detainer of the Premises, or an eviction of Tenant from the Premises or any portion thereof. Tenant agrees to allow "For Lease" signs of reasonable size to be placed in and remain upon the exterior or interior of the Premises during the last six (6) months of the Term or any extensions thereof of this Lease.

Landlord may, at its option and in its sole discretion, will permit Tenant and Tenant's employees and agents to enter the Premises prior to the Commencement Date, so that Tenant may do such work as may be required to make the Premises ready for Tenant's occupancy. Tenant agrees that any such entry or occupation of the Premises shall be governed by all the terms, conditions and provisions of this Lease, except for the payment of rent. Tenant further agrees that Landlord shall not be liable in any way for any injury, loss or damage which may occur to the Premises, or to any personal property placed therein, the same being at Tenant's sole risk. Finally, Tenant and its employees, agents, contractors and suppliers shall work in harmony with Landlord and its employees, agents, contractors and suppliers and will not interfere with the performance of any work in the Premises, which Landlord has agreed to perform under the terms of this Lease.

13.2 Tenant agrees that it shall comply and conform to all laws and ordinances, municipal, state and federal, and any and all lawful requirements, rules, directives, and orders of any properly constituted municipal, state or federal board or authority, present or future, in any way relating to the condition, use, occupancy, or operation of the Premises throughout the Term of this Lease and to the complete exoneration from liability or otherwise of Landlord. The judgment of any court of competent jurisdiction or the admission of Tenant in any action or proceeding against Tenant, whether Landlord be a party thereto or not, that Tenant has violated any such law, ordinance, requirement or order in Tenant's use of the Premises, shall be conclusive evidence of the fact as between Landlord and Tenant.

## ARTICLE 14
### Waiver of Subrogation, Subordination and Attornment

14.1 Each party hereby agrees that it shall not make a claim against or seek recovery from and hereby releases the other for any loss or damage to its property resulting from fire or other hazards covered by fire and extended coverage insurance, but only to the extent that such loss or damage is covered by the proceeds of such fire and extended coverage insurance. If this waiver shall increase the cost of a party's insurance or impair its ability to obtain the same, the party suffering such increased cost or impairment may terminate such waiver and release upon written notice to the other party hereto.

14.2 This Lease and Tenant's rights under this Lease (including, without limitation, any option or rights contained in the Lease, or otherwise existing, to acquire any or all of the Premises, or any superior leasehold interest therein) are subject and subordinate to any mortgage, deed of trust, or other encumbrance or indenture, together with any renewals, extensions, modification, consolidations, and replacement of them (each "a superior lien") that now or at any subsequent time affects the Premises or any interest of Landlord in the Premises or Landlord's interest in this Lease and the estate created by this Lease (except to the extent that the recorded instrument evidencing that superior lien expressly provided that this Lease is to be superior to the superior lien). This provision will be self-operative and no further instrument or subordination will be required in order to effect it, provided, notwithstanding such subordination, Tenant's right to possession of the Premises shall not be disturbed if Tenant is not in default and so long as Tenant shall pay the rent and observe and perform all of the terms, conditions and provisions of this Lease, unless this Lease is otherwise terminated pursuant to its terms.

14.3 If the holder of any mortgage, indenture, deed of trust, or other similar instrument described in Section 14.2 above succeeds to Landlord's interest in the Premises, Tenant shall pay to it all rent subsequently payable under this Lease. Tenant shall, upon request of any one succeeding to the interest of Landlord, automatically become lessee of, and attorn to, the successor without changing this Lease. The successor shall not be bound by (i) any payment of rent for more than one month in advance, or (ii) any amendment or modification of this Lease made without its written consent, or (iii) any claim against Landlord arising prior to the date that the successor succeeded to Landlord's interest, or (iv) any claim or offset of rent against Landlord. Any document evidencing such attornment will also provide that its successors will not disturb Tenant in its use of the Premises in accordance with its Lease.

14.4 Upon request, Tenant shall execute, acknowledge and deliver to Landlord, at any time and from time to time, the documents requested by Landlord or any mortgagee or prospective mortgagee or any holder of a deed of trust or prospective holder of deed of trust or other instrument described on Sections 14.2 and 14.3 above, to conform and affect the subordination and attornment in a form reasonably acceptable to Tenant, which acceptance shall not be unreasonably withheld or delayed the for attached hereto as Exhibit "C". ~~If Tenant does not execute, acknowledge and deliver any such documents within fifteen (15) days after written demand, Landlord, its successors and assigns, will be entitled to execute, acknowledge and deliver those documents on behalf of Tenant as Tenant's attorney-in-fact. Tenant constitutes and irrevocably appoints Landlord, its successors and assigns, as Tenant's attorney-in-fact to execute, acknowledge and deliver such documents on behalf of Tenant.~~

## ARTICLE 15
### Notices

15.1 All notices or other communications which may be required or which may be given under the terms of this Lease shall be in writing and shall be deemed sufficiently given or served if personally delivered to either party or if sent by Registered or Certified Mail, Return Receipt Requested, postage pre-paid, or by nationally recognized overnight delivery service such as Federal Express, Airborne, etc., in all cases addressed to the parties hereto at the respective addresses set forth in Section 1.1 of this Lease. The date of service by mail of any notice or other communication required which may be given under the terms of this Lease shall be two (2) days after the date on which the same is deposited in the United States Mail in accordance with the foregoing by the party giving such notice. The date of service by personal delivery shall be the date of such delivery. The date of service by overnight delivery service shall be the

day after the same is deposited with such overnight delivery service. Any address or name specified for notices may be changed by notice given in accordance with the provisions of this Section. The inability to deliver because of a changed address of which no notice was given or the rejection or other refusal to accept a notice or other communication shall not be deemed to affect the service of such notice.

## ARTICLE 16
### Security Interest and Landlord's Lien

16.1 ~~Landlord shall have and Tenant hereby grants to Landlord a continuing security interest for all rent and other sums of money becoming due hereunder from Tenant upon all goods, wares, equipment, fixtures, furniture, inventory, accounts, contract rights, chattel paper and other personal property of Tenant situated on the Premises, and such property shall not be removed therefrom without the prior written consent of Landlord until all arrearages and rent as well as any and all other sums of money then due to Landlord hereunder shall first have been paid and discharged. Proceeds of collateral are also covered. In the event of default under this Lease, Landlord shall have, in addition to any other remedies provided herein or by law or equity, all rights and remedies under the uniform Commercial Code, including, without limitation, the right to sell the property described in this Section 16.1 at public or private sale upon five (5) day notice to Tenant of the time and place of such sale. Any statutory lien for rent is not hereby waived, the express contractual lien herein granted being in addition and supplemental thereto. Landlord and Tenant agree that this Lease and security agreement shall serve as a financing statement and a copy of photographic or other reproduction of this portion of this Lease may be filed for record by Landlord and have the same force and effect as the original. The security agreement and financing statement also covers fixtures located at the financing statements, instruments or other documents as Landlord by request, in its discretion, to evidence or perfect the security interest granted herein.~~ See Rider 16.1

## ARTICLE 17
### General Conditions

17.1 Captions to the various articles and sections of this Lease are for convenience and ease of reference only and do not define, limit, augment or describe the scope, content or intent of this Lease or of any part or parts of this Lease.

17.2 Time is of the essence of this Lease and each and all of its provisions in which performance by either party is a factor.

17.3 No waiver of any breach or default shall constitute a waiver or any breach or default whether of the same or any other covenant or condition. No waiver, benefit, privilege or service voluntarily given or performed by Landlord shall give Tenant any contractual right by custom, estoppel or otherwise. The subsequent acceptance of rent pursuant to this Lease shall not constitute a payment so accepted, regardless of Landlord's knowledge of the preceding breach at the time of accepting the rent, nor shall acceptance of rent or any other payment after termination constitute a reinstatement, extension or renewal of the Lease or revocation of any notice or other act by Landlord.

17.4 The invalidity or illegality of any provision shall not affect the remainder of the Lease.

17.5 This Lease contains the entire agreement between the parties with regard to the subject matter hereof. No promise, representation, warranty or covenant not included in this Lease has been or is relied upon by the parties to this Lease. This Lease supersedes all prior oral or written agreements and covenants relative to the subject matters herein contained. Any additions, modifications or amendments to this Lease shall be in writing and signed by both parties.

17.6 The singular number includes the plural whenever the context so indicates. The neuter gender includes the feminine and masculine, the masculine includes the feminine and neuter, and the feminine includes the neuter and masculine, and each includes corporation, partnership or other legal entity when the context so requires. The word "person" means person or persons or other entities or any combination of person and entities.

17.7 Within no more than *fifteen (15)* ~~ten (10)~~ days after written request by Landlord, Tenant shall execute, acknowledge and deliver to Landlord an Estoppel Certificate in substantially the form and content of Exhibit "C" with such modifications as may be necessary at the time for accuracy, stating, among other things, (i) that this Lease is unmodified and in full force and effect, or, if the Lease is modified, the way in which it is modified accompanied by a copy of the modification agreement, (ii) the date to which rent and other sums payable under this Lease have been paid, (iii) that no notice has been received by Tenant of any default that has not been cured, or, if such default has not been cured, what Tenant intends to do in order to affect the cure, and when it will do so, (iv) that Tenant has accepted and occupied the Premises, (v) that Tenant has no claim or offset against Landlord, or, if it does, stating the circumstances that give rise to the claim or offset, (vi) that Tenant is not aware of any prior assignment of this Lease by Landlord, or, if it is, stating the date of the assignment and assignee (if known to Tenant), and (vii) such other matters that may be reasonably requested by Landlord. Any such certificate may be conclusively relied upon by Landlord and any prospective purchaser/encumbrancer of the Premises. ~~If Landlord submits a completed certificate to Tenant, and if Tenant fails to object to its contents within ten (10) days after its receipt of the completed certificate, the matters stated in the certificate will conclusively be deemed to be correct. Furthermore, Tenant irrevocably appoints Landlord as Tenant's attorney-in-fact to execute and deliver on Tenant's behalf any completed certificate to which Tenant does not object within ten (10) days after its receipt.~~

At Landlord's option, Tenant's failure to deliver such statement within such time shall be a material breach of this Lease or shall be conclusive upon Tenant (i) that this Lease is in full force and effect, without modification except as may be represented by Landlord, (ii) that there are no uncured defaults in Landlord's performance and (iii) that not more than one month's rent has been paid in advance of such failure may be considered by Landlord as a default by Tenant under this Lease.

If Landlord enters into a contract to sell or a loan commitment to finance or re-finance the Project or any part thereof, Tenant will deliver to such lender or purchaser such financial statements of Tenant as may be reasonably required by such lender or purchaser to consummate such transaction; provided, Tenant will have no obligation to provide any such financial statements to a purchaser that is a business competitor of Tenant. All such financial statements will be received by Landlord and such lender or purchaser in confidence, and will be used only for the purposes herein.

11

17.8 ~~Tenant agrees to furnish Landlord and its lender from time to time upon request, but not more frequently than annually, financial statements from an independent certified public accountant showing the then current net worth of Tenant as determined by generally accepted accounting principles.~~

17.9 So long as Tenant pays the rent, and performs all of its obligations in this Lease, Tenant's possession of the Premises will not be disturbed by Landlord, its successors and assigns.

17.10 All obligations of Tenant hereunder not fully performed as of the expiration or earlier termination of the Term or any extensions thereof of this Lease shall survive the expiration or earlier termination of the Term or any extensions thereof, including without limitation, all payment obligations with respect to taxes, insurance, utilities and all other obligations concerning the operation, repair, maintenance or condition of the Premises Upon the expiration or earlier termination of the Term or any extensions thereof, and prior to Tenant vacating the Premises, Tenant shall pay Landlord any amount reasonably estimated by Landlord as necessary to put the Premises, including without limitation, all heating and air conditioning systems and equipment therein, in good condition and repair, normal wear and tear excepted. Tenant shall also, prior to vacating the Premises, pay to Landlord the amount, as reasonably estimated by Landlord, Tenant's obligations hereunder for real estate taxes and insurance premiums for the portion of the year in which the Lease expires or terminates. All such amounts shall be used and held by Landlord for payment of such obligations of Tenant hereunder, with Tenant being liable for any additional costs therefore upon demand by Landlord, or with any excess to be returned to Tenant after all such obligations have been determined and satisfied, as the case may be.

17.11 Tenant represents and warrants that it has dealt with no broker, agent or other person in connection with this transaction, other than TIF Real Estate Services, Inc. (Tom Smolik and Natalie Prescott) and NAI Robert Lynn (Todd Hubbard). Tenant agrees to indemnify, defend and hold Landlord harmless from and against any claims by any other broker, agent or other person claiming commission or other form of compensation by virtue of having dealt with Tenant with regard to this leasing transaction. The real estate commission of shall be paid by Landlord as per separate agreement.

17.12 Parties hereby agree that, upon the request of either party, each will execute, acknowledge and deliver a short form of memorandum of this Lease in recordable form. Recording, filing and like charges shall be paid by the party requesting execution of the same. In the event of termination of this Lease, within thirty (30) days after written request from the Landlord, Tenant shall execute, acknowledge and deliver to Landlord an agreement removing such short form of lease from record. If Tenant fails to execute such agreement within said thirty (30) day period or fails to notify Landlord within said thirty (30) day period of its reasons for refusing to execute such agreement, Landlord is hereby authorized to execute and record such agreement removing the short form lease from record.

17.13 The persons executing this Lease on behalf of Tenant hereby covenants and warrants to Landlord that: Tenant is duly constituted limited liability company or corporation qualified to do business in state where the Property is located; to the extent the same are due and owing, all of the franchise and corporate taxes have been paid to date; all future forms, reports, fees' and other documents necessary to comply with applicable laws will be filed by Tenant when due; and such persons are duly authorized by the managers or board of directors of such corporation to execute and deliver this Lease on behalf of such corporation. The persons executing this Lease on behalf of Landlord hereby covenant and warrant that they have been duly authorized by the board of directors of such company or corporation to execute and deliver this Lease on behalf of the company or corporation

17.14 Tenant acknowledges and agrees that the liability of Landlord under this Lease shall be limited to its interest in the Property and any judgments rendered against Landlord shall be satisfied solely out of the proceeds of a sale of its interest in the Property and any applicable and available insurance proceeds. No personal judgment shall lie against Landlord upon extinguishment of its rights in the Property and any judgment so rendered shall not give rise to any right of execution or levy against Landlord's assets The provisions hereof shall inure to Landlord's successors and assigns including any mortgagee. The foregoing provisions are not intended to relieve Landlord from the performance of any of Landlord's obligations under this Lease, but only to limit the personal liability of Landlord in case of recovery of a judgment against Landlord; nor shall the foregoing be deemed to limit Tenant's rights to obtain injunctive relief or specific performance or to avail itself of any other right or remedy which may be awarded Tenant by law or under this Lease.

17.15 This Lease shall be construed in accordance with and governed by the laws of the state where the Property is located.

17.16 Tenant shall accept performance of any of Landlord's obligations hereunder by any mortgagee.

17.17 Nothing in this Lease shall be construed to make Landlord and Tenant partners or joint ventures or to render either party liable for the debts of obligations of the other.

17.18 Tenant will comply with the attached and incorporated Rules and Regulations (Exhibit "B") which are incorporated herein by reference. Landlord agrees to enforce such Rules and Regulations against all tenants of the Property on a consistent basis. To the extent the Rules and Regulations conflict with the Lease, the terms of the Lease shall govern.

17.19 Landlord and Tenant mutually waive any and all rights which either may have to request a jury trial in any proceeding at law or equity in any court competent jurisdiction.

17.20 Tenant, its officers, agents, servants, licenses, invitees, customers, suppliers and patrons shall have the non-exclusive right, in common with Landlord and all other tenants and their officers, agents, servants, licenses, invitees, customers, suppliers and patrons of the Property to whom Landlord may provide for common use on the Property. Such common areas shall include, but shall not be limited to, the parking areas, access roads and facilities, sidewalks and driveways. Such common areas shall be under and subject to the exclusive control and management of Landlord, and Tenant may not use such common areas for the storage of vehicles, trailers, merchandise, refuse (except for Tenant's trash dumpsters) or any other items for any period of time. If Tenant shall use any common area for storage of any items, Tenant shall pay all fines and/or charges imposed upon Landlord and/or Tenant by the fire, building or other regulatory

12

departments or agencies, and Tenant shall pay all costs to clean and dispose of Tenant's refuse. Tenant shall not store pallets, crates, drums, boxes, cardboard packaging or other containers outside the Premises (except for in Tenant's trash dumpsters) or any inoperable or unlicensed vehicles or equipment. In the event that Tenant shall store such items on the Property in violation hereof, Landlord may, after five (5) days written notice, dispose of them, and Tenant shall pay Landlord's disposal fee equal to $25.00 for each pallet, crate, drum or other container, plus additional costs for testing and special disposal, if required. If Tenant shall store operable, inoperable or unlicensed vehicles or trailers on the Property it shall pay a $50.00 fee per month per vehicle. Landlord shall have the right from time to time to establish and enforce rules and regulations with respect thereto. Landlord reserves the right from time to time to enlarge or diminish or otherwise alter or modify any of the common areas so long as in the reasonable judgment of Landlord, adequate common areas are made available for the use and convenience of the tenants of the Property and access to the Premises is not significantly impaired.

17.21 Landlord's federal employee identification number is 

IN WITNESS WHEREOF, the parties have executed this Lease on the date set forth above.

"TENANT"

EDGAR RODRIQUEZ, an individual

"LANDLORD"

PRISM PARTNERS, LLC,
an Oklahoma limited liability company

By: _____
Paul D. Wilson, Manager

(LANDLORD)



STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

Before me, the undersigned Notary Public in and for said County and State, on this 21st day of May, 2019 personally appeared Paul D. Wilson, who subscribed the name of PRISM PARTNERS, LLC, an Oklahoma limited liability company, to the foregoing Lease Agreement as its Manager and acknowledged to me that he executed the same as his free and voluntary act and deed and as the free and voluntary act and deed of PRISM PARTNERS, Inc., an Oklahoma corporation domesticated in Oklahoma, for the uses and purposes therein set forth. Witness my hand and official seal the day and year last above written.

My Commission Expires: 3-21-21

Linda D. Steel
Notary Public

(IF TENANT IS AN INDIVIDUAL)

STATE OF Texas )
) ss.
COUNTY OF Dallas )

Before me, the undersigned Notary Public in and for said County and State, on this 20 day of May, 2019 personally appeared Edgar Rodriguez who subscribed the name of Tenant to the foregoing Lease Agreement and acknowledged to me that _____ executed the same as _____ free and voluntary act and deed and as the free and voluntary act and deed, for the uses and purposes therein set forth. Witness my hand and official seal the day and year last above written.

My Commission Expires: 10/30/2022

Notary Public

BARRY KIM
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-30-22
Notary ID # 12851996-8

13

## EXHIBIT "A"
### Legal Description of Property

Approximately 54,636 SF Warehouse at 1680 Hickory Drive, Haltom City, Texas 76117 and contiguous parking lot, also known as Lots 2 and 3, Block 1, Melcher Industrial Park, an addition to the City of Haltom City, Tarrant County, Texas, according to the plat recorded in volume 388-117, page 93, deed records of Tarrant County Texas.

## EXHIBIT "B"
## BUILDING REGULATIONS

TENANT AGREES AS FOLLOWS:

1. All delivery or shipping of merchandise, supplies, or fixtures shall be done only in the areas, and through the routes designated for such purposes by Landlord by the signs and painted markings on paved areas.

2. With the exception of a commercial dumpster outside the Building in an area designated by Landlord, all garbage and refuse shall be kept in a container on the inside of the Building and Tenant shall provide for a service to pick up refuse. Tenant shall not burn any trash or refuse of any kind in or about the Premises or grounds.

3. No aerials or other devices shall be erected on the roof or exterior walls of the Premises or on the grounds without the written consent of Landlord. Any aerials or other devices so installed without such written consent shall be subject to removal without notice at any time.

4. Tenant shall not place or permit any obstructions or merchandise outside of the Premises or on the grounds except when actively loading or unloading merchandise during business hours.

5. The plumbing and drainage facilities shall not be used for any other purpose than that for which they are constructed, and no foreign substance, new or used oil or any hazardous material of any kind shall be put therein or down any drain in the Building or on the Property and the expense of any breakage, stoppage, fine or damage resulting from a violation of these provisions shall be borne by Tenant, who shall, or whose employees, agents or invitees shall have caused it.

6. Storing, stacking and stocking of all items shall be in accordance with regulations and procedures as established by Landlord's insurance carrier and/or insurance rating bureau *provided Tenant has received notice of such regulations and procedures*.

7. Tenant shall keep approved fire extinguisher with the Premises as required by Landlord's insurance carrier and/or insurance rating bureau.

15

EXHIBIT "C"
[FORM TENANT ESTOPPEL CERTIFICATE]

_____, 20___

[Name and Address]

Re: Lease between _____, as Landlord or its assignees ("Landlord"), and _____ as Tenant ("Tenant") for space in the _____ Project, _____ (the "Project"). Date of Lease: _____ Dates of amendments or modifications (including letter agreements): _____ (collectively referred to as the "Lease")

Ladies and Gentlemen:

Tenant understands that _____ ("Lender"), if applicable] intends to [make a loan to Landlord to be secured by the Project or purchase the Property (as applicable)]. Tenant presently leases premises within the Project (the "Premises") pursuant to the Lease, and, in connection with the foregoing, Tenant does hereby certify to you as follows:

    a.    The Lease is in full force and effect; there are no other promises, agreements, understandings or commitments between Landlord and Tenant relating to the Premises leased under the Lease; and Tenant has not given Landlord any notice of termination thereunder;

    b.    There has not been and is now no subletting of the Premises, or any part thereof, or assignment by Tenant of the Lease, or any rights therein, to any party;

    c.    A security deposit in the amount of $ _____ has been given by Tenant under the terms of, or with respect to, the Lease;

    d.    To the best of Tenant's knowledge and belief, no uncured default, event of default, or breach by Landlord exists under the Lease, no facts or circumstances exist that, with the passage of time, will or could constitute a default, event of default, or breach under the Lease. Tenant has made no claim against Landlord alleging Landlord's default under the Lease;

    e.    Tenant is in full and complete possession of the Premises and has accepted the Premises, including any work of Landlord performed thereon pursuant to the terms and provisions of the Lease, and all common areas of the Project (including, without limitation, parking areas, sidewalks, access ways and landscaping), are in compliance with the Lease and are satisfactory for Tenant's purposes.

    f.    To the best of Tenant's knowledge and belief, there are no rental, lease, or similar commissions payable with respect to the Lease, except as may be expressly set forth therein;

    g.    Tenant is obligated to pay rent to Landlord at the rate set forth in the Lease. Tenant is current with respect to, and is paying the full rent and other charges stipulated in the Lease (including, without limitation, common area maintenance charges) with no offsets, deductions, defenses or claims; and Tenant has not prepaid any rent or other amounts to Landlord other than rent and other charges due and payable in the calendar month of this certification;

    h.    Tenant is not entitled to any concession or rebate of rent or other charges from time to time due and payable under the Lease except as provided in the Lease;

    i.    The monthly base rent under the Lease is $ _____;

    j.    Tenant is open for business and in operation in the Project;

    k.    [If addressed to a lender.] Tenant agrees to provide copies of all notices given Landlord under the Lease to Lender at the following address:

_____
_____
_____

or such other address as Lender shall designate in writing;

    l.    The undersigned representative of Tenant is duly authorized and fully qualified to execute this instrument on behalf of Tenant thereby binding Tenant;

    m.    [If addressed to a lender.] Tenant agrees and acknowledges that the Lease is and shall be subordinate to the Mortgage (hereinafter defined);

    n.    Tenant acknowledges that the initial term of the Lease commenced on _____, 20___, and shall expire on _____, 20___, unless sooner terminated in accordance with the terms of the Lease. Tenant has no option to renew or extend the lease term, except as follows (if none, so state): _____;

    o.    Tenant has no option or right to purchase the property of which the Premises are a part, or any part thereof;

p. [If addressed to a lender.] Tenant understands and acknowledges that Lender is about to make a loan to Landlord and receive as part of the security for such loan (i) a Mortgage/Deed of Trust encumbering Landlord's fee interest in the Project (of which the Premises are a portion) and the rents, issues and profits of the Lease (the "Mortgage"), and (ii) an Assignment of Leases and Rents ("Assignment of Leases") which affects the Lease, and that Lender (and persons or entities to whom the Mortgage and/or Assignment of Leases may subsequently be assigned) is relying upon the representations and warranties contained herein making such loan. Further, Tenant has notice that the Lease and the rent and all other sums due thereunder have been assigned or are to be assigned to Lender as security for the aforesaid loan secured by the Mortgage. In the event that Lender (or any person or entity to whom the Mortgage and/or Assignment of Leases may subsequently be assigned) notifies Tenant of a default under the Mortgage or Assignment of Leases and demand that Tenant pay its rent and all other sums due under the Lease to lender (or such future lender), Tenant shall honor such demand and pay its rent and all other sums due under the Lease directly to Lender (or such future lender) or as otherwise required pursuant to such notice.

q. [If addressed to a prospective purchaser.] Tenant acknowledges that you will rely on the foregoing certification in connection with your acquisition of an interest in the subject property and that but for such certification by Tenant, you would not complete the acquisition of such interest.

Tenant acknowledges and agrees that Landlord and the party to whom this estoppel certificate is address shall be entitled to rely on Tenant's certifications set forth herein.

IN WITNESS WHEREOF, Tenant has executed this instrument this ____ day of _____, 20 ___.

SIGNATURE BLOCKS AND NOTARY<br>ACKNOWLEDGMENTS FOR TENANT

17

EXHIBIT "D"
RIDER TO LEASE AGREEMENT
BETWEEN PRISM PARTNERS, LLC "Landlord" AND
EDGAR RODRIGUEZ "Tenant"

**Rider 4.7  Renewal Option**  Provided Tenant is not in default under the terms and provisions of this Lease, Tenant, subject to the terms and conditions hereinafter provided, shall have the right to extend the Term for one "Renewal Term" of sixty (60) months, with the Renewal Term to begin on the day following the expiration of the Term. Such extension shall be conditioned for its effectiveness upon Tenant notifying Landlord, in writing, by certified or registered mail, return receipt requested, of Tenant's decision to extend the Term, as herein provided, on or before 1/31/2029 for the Renewal Term. All of the terms and conditions of the Lease shall continue in full force and effect during the Renewal Term except Base Rent which shall be as follows:

08/01/2024-07/31/2029    $ 20,943.80                4.60            Months 61-122

**Rider 5.3.1**  EDGAR RODRIGUEZ is the only tenant on the Property and occupies 100% of the tenant space and therefore Tenant's "proportionate share" as referenced in this Lease is 100%

**Rider 8.1 (b)**  Provided however, that if it is impossible for Tenant to cure such non-monetary failure within said thirty (30) day period despite Tenant's commercially reasonable efforts to do so, then the time period for performance shall be extended for such additional time as is reasonably necessary to cure such failure, but in no event shall such additional time after the initial 30 day period exceed 30 additional days. The Premises shall not be considered abandoned and Tenant shall not be in default, so long as Tenant continues to pay Rent and Additional Rent and otherwise complies with this Lease save for physical occupancy.

**Rider 9.3**  Tenant shall accept the Premises in an "As-Is" condition except that Landlord, at its sole cost and expense, at commencement shall make the following improvements to the Premises:
1. Place the following building systems existing upon Commencement, including, warehouse heaters, fire sprinkler system, office HVAC, office restrooms, overhead doors, lights, electrical and warehouse bathroom plumbing systems in good working order prior to Commencement Date.
2. Place all overhead doors, edge dock and load leveler in good working condition.

**Rider 9.6**  Landlord has no knowledge of the violation of any Environmental Laws on the Property or the release of any Hazardous Materials on the Property. Landlord's knowledge shall be defined as the actual knowledge of Paul D. Wilson, Manager of Landlord.

**Rider 16.1**  Landlord hereby expressly waives any landlord's lien, contractual or statutory to any of Tenant's personal property located on or connected to the Premises. Additionally, from time to time within ten (10) business days following a written request by Tenant *in a form reasonably acceptable to Landlord*, Landlord shall execute and return to Tenant a written waiver (on any form reasonably required by Oklahoma law) of Landlord's lien rights under applicable law with respect to any inventory, equipment or trade fixtures.

The above RIDERs are hereby incorporated into and shall be deemed to be a part of that certain Lease Agreement by and between PRISM PARTNERS LLC and EDGAR RODRIGUEZ dated May 20, 2019. The RIDERs are intended to amend, supplement, and replace certain provisions in the Lease. If there is any conflict or inconsistency between the provisions of the Lease Agreement and the RIDERs, the RIDERs shall control.

"TENANT
EDGAR RODRIGUEZ, an individual

*[signature]*

"LANDLORD"
PRISM PARTNERS LLC,
an Oklahoma limited liability company

By: *[signature]*
Paul D. Wilson, Manager

18